IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLIANCE GIRARD OWNER LLC,** *Plaintiff,* | : | |
| v. | : | **CIVIL NO. 25-6144** |
| **MARCUS TOCONITA et al.,** *Defendants.* | : | |

**MEMORANDUM**

**Scott, J.** **November 23, 2026**

Pending before the Court are Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint. Because Plaintiff attempts to recast an ordinary breach of contract claim as RICO violations, the Court grants the Motions, dismissing with prejudice Plaintiff's Second Amended Complaint.

## I. Factual Background

This dispute arises from a construction project. Plaintiff Alliance Girard Owner, LLC, ("Alliance Girard") is the owner of a 160-unit apartment project located at 27th and Girard Avenue in Philadelphia, Pennsylvania. 2d Am. Compl. ¶¶ 35-36. Defendants Marcus Toconita and Antonio Cutrufello act as partners and directors of production and development, respectively, for the Callahan Ward Companies. *Id.* ¶¶ 4-5. The Callahan Ward Companies (or "Callahan Ward Defendants") consist of Defendants Callahan Ward Construction Management, LLC ("CW Management"), Callahan & Ward Properties, LLC ("C&W Properties"), Callahan Ward Finch, LLC ("CW Finch"), Callahan Ward Lee, LLC ("CW Lee"), Callahan Ward Temple, LLC ("CW Temple"), Callahan Ward Temple II, LLC ("CW Temple II"), Callahan Ward Temple III, LLC ("CW Temple III"), Callahan Ward Temple IV, LLC ("CW Temple IV"), Callahan Ward Temple V, LLC ("CW Temple V"), Callahan Ward Temple VI, LLC ("CW Temple VI"), Callahan Ward

Temple VII, LLC ("CW Temple VII"), Callahan Ward Temple IX, LLC ("CW Temple IX"), Callahan Ward Temple X, LLC ("CW Temple X"), Callahan Ward Temple XI, LLC ("CW Temple XII"), Callahan Ward Temple XIII, LLC ("CW Temple XIII"), Callahan Ward Haick, LLC ("CW Haick"), Callahan Ward Haick Two, LLC ("CW Haick Two"), Callahan Ward Haick Three, LLC ("CW Haick Three"), Callahan Ward Brewerytown Two, LLC ("CW Brewerytown Two"), Callahan Ward Cumberland, LLC ("CW Cumberland"), Callahan Ward Mantua I, LLC ("CW Mantua I"), and CWH Montana, LLC ("CWH Montana"). *Id.* ¶¶ 7-28.

The central allegations are as follows: On April 22, 2022, Defendant CW Management executed an Agreement with Alliance Girard under which CW Management was hired to serve as general contractor for the construction project. *Id.* ¶ 42. Pursuant to that Agreement, CW Management agreed to build 160 apartment units plus commercial space for $26,507,076. *Id.* ¶ 43. The Agreement and Side Letter between Alliance Girard and CW Management governing the project expressly stated that CW Management would be "fully responsible for all costs for the construction of the Project whether or not in excess of the budgeted amounts." *Id.* ¶ 44. Throughout the project, Defendants Toconita and Cutrufello submitted monthly payment applications to Alliance Girard on behalf of CW Management to pay subcontractors. *Id.* ¶¶ 50-51. Plaintiff alleges, however, that Defendants Toconita and Cutrufello misrepresented that the money was being used to pay the subcontractors because they instead diverted the funds to a different company owned and controlled by Defendants, C&W Properties. *Id.* ¶¶ 48-51.

Plaintiff alleges that throughout the Fall of 2024 and into January of 2025, the money that was supposed to be used by CW Management to complete the construction project was diverted by Defendants Toconita and Cutrufello to fund the acquisition and construction of fifteen other projects owned by them. *Id.* ¶ 54. Plaintiff also alleges that through phony lien waivers, fraudulent

misrepresentations, and falsified sworn statements, Defendants Toconita and Cutrufello concealed that the money was paid to C&W Properties rather than CW Management, the entity that was party to the original Agreement. *Id.* ¶¶ 60-62. Plaintiff contends that each of the Callahan Ward Companies are part of an "enterprise" within the meaning of 18 U.S.C. § 1962, and that this enterprise was controlled and operated by Defendants Toconita and Cutrufello for their personal benefit. *Id.* ¶¶ 65-66. Plaintiff further alleges that Defendants Toconita and Cutrufello "engaged in a pattern of racketeering activity consisting of mail fraud, wire fraud and bank [fraud], and engaged in a scheme to defraud the Plaintiffs and others by, *inter alia*, utilizing shell companies with little or no assets, making fraudulent representations in monthly payment applications . . . and by surreptitiously diverting Project funds[.]" *Id.* ¶ 67.

Counts One, Two, and Three are against all Defendants: Count One alleges a RICO Violation of Section 1962(c), Count Two alleges a RICO Violation of Section 1962(d), and Count Three is a fraud claim.

Counts Four, Five, Six, Seven, and Eight are against the individual Defendants: Count Four alleges fraudulent misrepresentation, Count Five seeks to pierce the corporate veil, Count Six alleges civil conspiracy, Count Seven alleges tortious interference with a contract, and Count Eight is a conversion claim.

Count Nine is a dissociation claim against Defendant CW Finch. Count Ten seeks to quiet title to real estate against the individual defendants, CW Temple VII, CW Temple VI, and CW Temple IX. *Id.* ¶¶ 109-168.

The present Motions to Dismiss filed by Defendants Toconita, Cutrufello, and the Callahan Ward Defendants seek to dismiss with prejudice all Counts for failing to state a claim against them.

## II. Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pled allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

Furthermore, RICO claims predicated on mail and wire fraud must also satisfy the heightened pleading standard of Rule 9(b), which "requires that the fraud be pled with specificity." *Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") The Third Circuit has observed that plaintiffs must plead "the date, time, and place of the alleged fraud, or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum*, 361 F.3d at 223-224). The alleged mail or wire fraud scheme "need not be fraudulent on its face, but must involve some

sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Lum*, 361 F.3d at 223 (quoting *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir.1998)). "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010). Moreover, "[a]llegations of acts that may be wrongful as a matter of contract law are not necessarily properly pleaded predicate acts simply because the injured party appends the term 'false' or 'fraudulent.'" *Midvale Commons, LLC v. Constr. Loan Servs. II LLC*, No. 26-128, 2026 U.S. Dist. LEXIS 221383, at *10 (E.D. Pa. Sept. 29, 2026) (citing *Kolar*, 361 F. App'x at 363-64).

## III. Discussion

### a. RICO Claims

Count One alleges a RICO violation under 18 U.S.C. § 1962(c), which proscribes "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a claim under § 1962(c), Plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum*, 361 F.3d at 223 (citing *Sedima, S P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also Sunlight Elec. Contr. Co. v. Turchi*, 918 F. Supp. 2d 392, 401 (E.D. Pa. 2013). Count Two alleges a RICO violation under § 1962(d), which states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

To establish a pattern of racketeering, Plaintiff must identify at least two predicate acts of racketeering activity. *Kolar*, 361 F. App'x at 359; 18 U.S.C. § 1961(5). In support of Count One, Plaintiff alleges a "pattern of racketeering activity in which the Defendants engaged [in] . . . robbery in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3701(a)); extortion in violation of Pennsylvania law punishable by more than one year in prison (18 Pa.C.S.A. § 3923(a)(6)); mail fraud (18 U.S.C. § 1341); wire fraud (18 U.S.C. § 1343); bank fraud (18 U.S.C. § 1344); interference with commerce (18 U.S.C. § 1951); and, obstruction of official proceedings (18 U.S.C. § 1512)." 2d Am. Compl. ¶ 111. In support of Count Two, Plaintiff alleges that the "Defendants did unlawfully, knowingly, and intentionally, combine, conspire, confederate, and agree together with each other, and with others whose names are known or unknown, to conduct and participate, directly and indirectly, in the pattern of racketeering activity." *Id.* ¶ 115.

Defendants take issue with Plaintiff's RICO claims writ large, but the Court focuses its analysis below on Plaintiff's failure to plead the requisite predicate acts. *See, e.g.,* ECF No. 38-1 (arguing that Plaintiff fails to allege an enterprise, participation in said enterprise, a pattern of racketeering activity, scienter, and sufficient predicate acts); ECF No. 39-1 (same). Defendant Toconita argues that "all of Alliance's allegations arise from either the Side Letter or the Agreement. Alliance's RICO claim attempts to avoid this, instead focusing on allegedly fraudulent wire instructions. But the tie between the wire fraud instructions, statements made in connection with payment applications, and Alliance's wiring of payment cannot be removed from the Contract." ECF No. 38-1 at 21. The Callahan Ward Defendants argue similarly, contending that "[t]he Third Circuit has long recognized that breach of contract claims cannot be transformed into

RICO violations merely by alleging mail or wire fraud as predicate acts." ECF No. 39-1 at 22. This Court agrees.

At its core, and as discussed above, this dispute is about the Defendants not paying subcontractors money the Defendants received from Plaintiff as outlined in the Agreement and Side Letter. Plaintiff attempts to transform this garden-variety contractual dispute into a vast RICO conspiracy by including conclusory statements that Defendants falsely, fraudulently, and illegally engaged in various acts to Plaintiff's detriment. *See, e.g.,* 2d Am. Compl. ¶ 104 ("The enterprise dealt by . . . inflating construction costs to obtain construction loans for Defendants, . . . stealing labor and materials from subcontractors and suppliers on this Project and others, fraudulently diverting Alliance Girard's money by providing fraudulent wire transfer instructions, falsifying lien waivers and Applications for Payment, extorting Plaintiffs and their subcontractors and suppliers to settle Defendants['] debts, and engaging in other predicate acts in furtherance of the enterprise's common purpose of making money by unlawful means."). Plaintiff tells a story of lies, fraud, and manipulation on Defendants' part, but the facts themselves—separate from Plaintiff's conclusory statements which the Court need not take as true—do not support that story.

For instance, Plaintiff alleges that because (i) CW Management agreed to be "fully responsible for all costs for the construction of the Project whether or not in excess of the budgeted amounts[,]" (ii) CW Management was not Defendants Cutrufello and Toconita's primary company, and (iii) the company had no assets and was judgment proof, Plaintiff "would be left 'holding the bag' on any overages." *Id.* ¶¶ 44-45. From there, Plaintiff concludes that Defendants Cutrufello and Toconita "falsely represented that CW Management would cover any overages **with knowledge of its falsity or recklessness as to whether CW Management could fulfill on that promise and with the intent of misleading Alliance Girard**." *Id.* ¶ 46 (emphasis added);

*see also id.* ¶ 57 (citing Ex. D). Although Rule 9(b) permits Plaintiff to allege Defendants' intent generally, the Court has no plausible basis under Rule 12(b)(6) to credit Plaintiff's conclusion that these circumstances evidence Defendants' intent to mislead or otherwise deceive Plaintiff. On the face of the Second Amended Complaint, this appears to be nothing more than an instance of Defendants failing to meet their obligations under a valid contract. There is no reasonable basis for the Court to infer anything more. This example, however, highlights the fatal flaw of Plaintiff's Second Amended Complaint: it is long on improper conclusions and short on facts that stand on their own.

To be clear, the Court takes no position regarding whether Plaintiff would succeed on a breach of contract claim. That claim was not included in the Second Amended Complaint and therefore is not before this Court. But the key here is that this dispute fundamentally sounds in contract no matter how Plaintiff attempts to dress it up. Merely stating that Defendants engaged in a fraudulent RICO conspiracy does not make it so. That fact remains unchanged despite the many paragraphs and exhibits Plaintiff includes to obfuscate the fact that "such [alleged] deceit centered entirely around the relevant contracts." ECF No. 38-1 at 23.

The Third Circuit has expressly distinguished civil RICO claims from common-law claims: "theft by deception, like a simple breach of contract or intentional interference with contract, is not a predicate act of racketeering activity enumerated in § 1961(1). Even though § 1961 and its mail and wire fraud predicates have been interpreted with flexibility, courts discussing the state crime of theft, and its analogues, have refused to read it into § 1961's expansive list." *Annulli v. Panikkar*, 200 F.3d 189, 199 (3d Cir. 1999) (internal citation omitted). Courts have refused to do so because "RICO's list of acts constituting predicate acts of racketeering activity is exhaustive.

To read it otherwise would be to usurp the role of Congress in drafting statutes." *Id.* at 200 (internal citations omitted).

Moreover, the Third Circuit has observed that civil RICO law "is already a behemoth[,]" and including "garden-variety state law crimes, torts, and contract breaches . . . would swallow state civil and criminal law whole." *Id.* If this Court were to read into the statute ordinary contractual disputes such as this one, it would open the floodgates. Judicial economy counsels against such a reading, as does straightforward statutory interpretation. In enacting the RICO statute, Congress did not intend to "federalize every state tort, contract, and criminal law action." *Id.* Other courts have held similarly. *See, e.g., United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) ("the statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract"); *Gagliardi v. Ward*, 967 F. Supp. 67, 69 (N.D.N.Y. 1997) ("Here, plaintiffs allege that defendant was party to a breach of contract. Breach of contract, however, does not constitute a scheme to defraud."); *Sunlight Elec. Contr. Co.*, 918 F. Supp. 2d at 405 ("Here, the essence of Sunlight's allegation is that Turchi repeatedly failed to pay it the money it was owed according to their contracts. As such, Sunlight presents a garden variety breach of contract claim between a developer and contractor. Defendants' actions do not involve the deceit crucial to be the stuff of a civil RICO claim."); *Fuce v. West*, No. 12-0874, 2012 U.S. Dist. LEXIS 104209, 2012 WL 3046235, at *9-10 (E.D. Pa. July 26, 2012) ("Failing to honor the terms of an employment agreement is a breach of contract, which is not actionable under RICO.").

In sum, Plaintiff has not pled facts sufficient to demonstrate the plausibility of concluding that Defendants engaged in the necessary predicate acts. The Court therefore dismisses both the § 1962(c) pattern-of-racketeering claim and § 1962(d) conspiracy-to-racketeer claim.

**b. Pendent State Law Claims**

Plaintiff's remaining claims under Counts Three through Ten are state-law claims. The supplemental jurisdiction statute provides that "the district court may decline to exercise supplemental jurisdiction over a claim . . . if [] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Third Circuit has observed that this "decision is left to the sound discretion of the district court." *Annulli*, 200 F.3d at 202. Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining claims. Plaintiff may nonetheless pursue the state-law claims in state court.

**IV. Conclusion**

The Court grants Defendants' Motions to Dismiss, dismissing with prejudice the Second Amended Complaint in its entirety. An appropriate Order accompanies this Memorandum.